IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MEMORIAL HOSPICE, INC. AND
VANELLA CAMPBELL,                                    PLAINTIFFS/COUNTER-
                                                     DEFENDANTS

V.                                                   CIVIL ACTION NO.
                                                     2:08-CV-48-B-A

RUTHIE NORRIS                                        DEFENDANT/COUNTER-
                                                     PLAINTIFF

MEMORANDUM OPINION

The plaintiffs/counter-defendants Memorial Hospice, Inc. and Vanella Campbell seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure [docket no. 60] dismissing defendant/counter-plaintiff Ruthie Norris's counterclaims and entering judgment in favor of plaintiffs, including on their initial claim against Norris. The defendant has responded, asserting that genuine issues of material fact remain, and summary judgment on her claims is therefore not proper.

In accordance with 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to render an opinion regarding this motion for summary judgment.

I. FACTUAL SUMMARY

The following facts are undisputed. Ruthie Norris began working at Memorial Hospice, Inc. [Memorial] in December of 2003 as office manager [Docket no. 60-2, p. 2-3] at a starting salary of twelve dollars an hour. Docket no. 60-2, p. 5. Norris briefly left Memorial's employ,

but returned, and in late 2005 or early 2006, she was given the title of executive director. Docket no. 60-2, p. 6. Norris terminated her employment with Memorial in May of 2007. At the time she left, her pay rate was twenty-four dollars per hour. Docket no. 60-2, p. 7.

Norris's routine work hours were Monday through Friday from 8:00 a.m. until 4:30 p.m. and occasionally on Saturdays. Docket no. 60-2, p.9. In addition, Norris was on call for Memorial beginning in December 2005. Docket no. 60-2, p. 15. Norris carried the company cell phone and took calls that came in after routine business hours. Docket no. 60-2, p. 15-16. Norris testified that was able to go about her normal activities, and being on call did not other wise preclude her from doing what she wanted around her home. Docket no. 60-2, p. 16-17. She did not, however, like being on call all the time [Docket no. 60-2, p. 18], contending that her ability to go on vacation was restricted despite having national cell phone coverage. Docket no. 60-2, p.17-18. Norris was compensated two hundred dollars ($200) per pay period for being on call. Docket no. 60-2, p. 17.

During her employment with Memorial, Norris borrowed money from Campbell in an arrangement under which Campbell would loan the money and then take it out of Norris's paycheck. Docket no. 60-2, p. 21-22. Norris testified to borrowing a total of $ 16,268 that comprised smaller loans in the following amounts:

    a) $8,368
    b) $700
    c) $2500
    d) $1500
    e) $3000[1]
    f) $200

Norris and Campbell occasionally executed promissory notes regarding the loans, but she was not

---

[1] Docket no. 60-2, p. 23, 25. Norris did not recall receiving the loan for $3000, but did acknowledge her signature on a promissory note for $3000. See also Docket no. 60-8.

always required to sign a promissory note to borrow money. Docket no. 60-2, p. 29.

Initially under the repayment terms Campbell would take one hundred dollars ($100) out of each paycheck, but Norris eventually requested that she take out three hundred dollars ($300) per pay period. Docket no. 60-2, p.29. By the time Norris left her employment at Memorial, she had paid back $10,300 through paycheck withholdings. Docket no. 60-4, p.1-15. Memorial withheld $2,998.15 from Norris' last two paychecks [Docket no. 60-4, p.15-16] making a total of $13,298.15 withheld from Norris' paychecks for loan repayments. Memorial contends that Norris still owes it $3,069.85 – the basis for the original law suit brought by Memorial. Docket no. 61, p. 13. Norris contends that Memorial had no right to retain the amount of $2,998.15 from her last two paychecks. Docket no. 65, p. 16.

During the time she was employed at Memorial Norris occasionally stayed overnight with Campbell, although she testified that staying with Campbell was not part of her job duties. Docket no. 60-2, p. 39-40. Norris agreed to stay with Campbell because they were friends [Docket no. 60-2, p. 11] beginning around December 31, 2006 when Campbell entered the hospital. Norris testified that she was be compensated for staying with Campbell after Campbell was released from the hospital. Docket no. 60-2, p. 12. She does not recall the total number of days that she stayed with Campbell, only that it was approximately three to four nights per week for four weeks. Docket no. 60-2, p. 12-13. In addition, she testified that she stayed with Campbell from March until May of 2007 on three to four nights a week [Docket no. 60-2, p. 14], providing Campbell with comfort measures during her stays at Campbell's home. Docket no. 60-2, p.14. Norris received $2,500 in May, 2007 that she claims was a gift from Campbell. Docket no. 60-2, p. 27.

3

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water*

*Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). If the moving party meet its burden, the non-movant must identify specific facts demonstrating there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). Unsubstantiated assertions, improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 313 (5th Cir. 2003) (internal citations omitted). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075.

B. ACTIONABLE CLAIMS UNDER THE FAIR LABOR STANDARDS ACT [FLSA]

Norris made counterclaims against the Memorial under the FLSA, 29 U.S.C. §201, et seq. [Docket no. 9], alleging that Memorial did not pay her for the time that she worked and did not pay her overtime for the hours she worked in excess of forty hours per week. Docket no. 9, p. 18-19.

1. SERVICES SUPPLIED TO CAMPBELL

The employee bringing a claim for unpaid overtime compensation and liquidated damages has the burden of proving that she performed the work for which she was not properly compensated. *Anderson v. Mt. Clemmons Pottery Co.*, 328 U.S. 680, 686-87 (1946). If the employer's records are properly kept and accurate, the employee may easily meet this burden. *Mt. Clemmons*, 328 U.S. at 687. When, however, the employer does not keep such records, the employee may meet the burden if she proves that she has performed work for which she was improperly compensated, and she produces sufficient evidence to show the extent of that work as

a matter of a just and reasonable inference. *Id.*; *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985). The burden then shifts to the employer to provide either specific evidence as to the amount of work performed or evidence to negate the reasonableness of the inference that can be drawn from the employee's evidence. *Mt. Clemmons*, 328 U.S. at 687-88; *Beliz*, 765 F.2d at 1330.

Norris claims that she was not compensated for the time that she spent with Campbell at her home in January 2007 and March through May, 2007. Neither Campbell nor Memorial kept any records of the time that Norris stayed with Campbell. Norris described the time that she spent with Campbell and the services that she provided. Thus, the burden has shifted to Memorial to negate any inference created by Norris regarding the services she provided and whether she was due compensation and to what extent. There remains a genuine issue of material fact as to whether Memorial has met this burden; therefore, the court cannot grant the plaintiff/counter-defendants' motion for summary judgment on this issue.

## 2. COMPENSATION FOR ON-CALL TIME

The Supreme Court has held that time spent on call is compensable under the FLSA. *Clay v. City of Winona, Mississippi*, 753 F. Supp. 624, 627 (N.D. Miss. 1990), citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944). The Court has not attempted to, nor can it, lay down a legal formula to resolve cases so varied in facts. *Skidmore*, 323 U.S. at 136. Whether time spent waiting is compensable under the FLSA is a question of fact. *Id*. At 136-37; *See also Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependant upon all circumstances of the case."). The factual inquiry requires review of the following factors; (a) the agreements between

6

the parties; (b) analysis of the practical construction of the working agreements by the parties' conduct; (c) consideration of the nature of the service and its relation to waiting time; and (d) all of the surrounding circumstances. *Skidmore*, 323 U.S. at 137.

The courts have fashioned a "waiting to be engaged" doctrine to make it possible to determine whether on-call workers deserve compensation under the FLSA. *Hafferty v. Pulse Drug Company, Inc.*, 864 F.2d 1185, 1189 (5th Cir. 1989). Moreover, the federal regulations at 29 C.F.R. 785.14-.17 (2008) have codified and elaborated upon the waiting to be engaged doctrine. The critical inquiry is whether the employee who is on call can use the time effectively for his or her own purposes. *Hafferty*, 864 F.2d at 1189; 29 C.F.R. §§ 785.16, 785.17; *see also Clay*, 753 F.Supp. at 628.

Employees who have received compensation for idle time generally have had no freedom at all. *See, e.g., Bright v. Houston Northwest Medical Center Survivor, Inc.*, 888 F.2d 1059 (5th Cir. 1989). On the other hand, employees with the freedom to sleep, eat, watch television, entertain guests and leave their home, as long as coverage arrangements were made, were not entitled to on call compensation. *See, e.g., Hafferty*, 864 F.2d at 1190 (internal citations omitted).

Whether the compensation that Norris received was adequate for the amount of time she spent on call is an issue of fact. Norris testified that although she could do many of her normal activities, she was unable to go on vacation and did not like being on call all the time. There remains a material issue of genuine fact as to whether Norris had freedom under the on-call schedule as required under the waiting to be engaged doctrine. Consequently, the court denies the plaintiff/counterdefendants' motion for summary judgment on this issue.

## C. BREACH OF CONTRACT

Oral contracts are enforceable in Mississippi when they satisfy the legal requirements. *Ladner v. Manual*, 744 So.2d 390, (Miss.App. 1999), citing *R.C. Construction Co., Inc. v. National Office Systems, Inc.*, 622 So. 2d 1253, 1255 (Miss. 1993). The existence of an oral contract is an issue of fact. *Id.* Further, it is a basic tenet of contract law that a contract requires an offer and acceptance. *Id.,* citing *Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1186 (5th Cir. 1981).

The defendants rely on *Vannoy v. Saks, Inc.*, 87 Fed.Appx. 349, 353 (5th Cir. 2004) for the premise that Mississippi law does not recognize a binding obligation when the oral promise is indefinite. Docket no. 61, p.14. The court, however, finds that *Vannoy* is not applicable in the instant case as the statement regarding vague promises not being enforceable was made in reference to the application of promissory estoppel. Norris is asserting a claim of breach of an oral contract; not arguing for the application of promissory estoppel. Moreover, Norris's claim is factually closer to *Ladner* than it is to *Vannoy.* Consequently, the applicable law concerns whether there was an offer and an acceptance constituting an oral contract and whether that oral contract is enforceable.

Norris claims that Memorial breached its oral employment contract with her by retaining her earnings in her last two paychecks and by not compensating her for staying with Campbell. Docket no. 65, p. 17. On the first issue, the court is not persuaded that Memorial had the legal right to retain Norris's earnings in order to pay down the debt. Memorial has not presented any legal theory to support its position that retaining Norris's earnings was proper. Promissory notes were not always executed with each debt, and the terms contained within those executed promissory notes are general, vague and do not address the factual situation presented here.

8

Secondly, as discussed above, whether Norris was to compensated for staying with Campbell and the terms of any compensation is a question of material fact, which must be resolved by the jury. Consequently, the plaintiffs/counterdefendants' motion for summary judgment on this issue is denied.

### D. FRAUD

To establish fraud under Mississippi law , the plaintiff must prove (1) a representation, (2) the representation's falsity, (3) the representation's materiality, (4) the speaker's knowledge of the falsity or ignorance of the truth, (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the representation's falsity, (7) the hearer's reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Franklin v. Lovitt Equipment Co., Inc.*, 420 So.2d 1370, 1373 (Miss. 1982). Moreover, these elements must be shown by clear and convincing evidence. *Id.*

Norris claims that fraud occurred because she was promised compensation for staying with Campbell and that she did not receive any compensation. Memorial states that the $2,500 Norris received from Campbell was not merely a gift, but compensation for staying with her. Moreover, Memorial relies on the fact that Norris acknowledges that she was willing to stay with Campbell in part due to friendship. Neither party has presented sufficient evidence to resolve the numerous contradictory facts. The jury must decide whether the promise of compensation was a material fact that Norris relied upon in agreeing to stay with Campbell. The court denies the plaintiffs/counterdefendants' motion for summary judgment on this issue.

### E. CONVERSION, EXTORTION, ABUSE OF LEGAL PROCESS AND CIVIL CONSPIRACY
#### 1. CONVERSION AND EXTORTION

Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's rights. *Union National Life Ins. Co. v. Crosby*, 870 So.2d 1175, 1181 (Miss. 2004). While conversion requires an intentional act, the required intent does not have to be that of a wrongdoer. *Wallace v. United Mississippi Bank*, 726 So.2d 578, 589 (Miss.1988). The intent is to exercise domain or control over the goods which are inconsistent with the true owner's rights. *Id.*

The general definition of extortion includes compelling or coercing by any means which overcome one's power of resistance or gaining by wrongful method. *Fowler v. Burns Intern. Sec. Services, Inc.*, 763 F. Supp. 862, 864 (N.D. Miss. 1991).

As discussed above, the court is not persuaded by Memorial that withholding earnings from Norris' last two paychecks was within its legal rights to obtain repayment on Norris' debt. Thus, a genuine issue of material fact remains as to whether the money retained by Memorial was in fact conversion, a wrongful act. The court denies the plaintiffs/counterdefendants' motion for summary judgment on these issues.

## 2. ABUSE OF LEGAL PROCESS

Under Mississippi law, abuse of process is the intentional use of the legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, with resulting damages. *McCornell v. City of Jackson, Miss.*, 489 F.Supp.2d 605, 610 (S.D.Miss. 2006), citing *Hyde Const. Co. Inc. V. Koehring Co.*, 387 F.Supp. 702, 711-14 (S.D.Miss.1974). Abuse of process is an intentional tort that requires a showing of bad faith. *McCornell*, 489 F.Supp.2d at 611 (internal citations omitted). The elements of an abuse of process claim are that (1) the defendants made an illegal, improper, perverted use of the process,

(2) they had an ulterior motive or purpose in doing so, and (3) the plaintiff suffered damages. *McCornell*, 489 F.Supp.2d at 611 citing to *State for Use and Benefit of Richardson v. Edgeworth*, 214 So.2d 579, 586 (Miss.1968).

Th the plaintiffs/counterdefendants' initial law suit was to recover the monies owed by Norris. Norris testified to borrowing $ 16,268 from Campbell, which was not completely repaid at the time that she left her employment at Memorial, regardless of the money reatined by Memorial from Norris's last two paychecks. In filing the initial claim to recover the monies owed, Memorial was within its legal rights to file such a claim and consequently did not engage in an illegal, improper or perverted use of the legal process. Therefore, the court grants the plaintiffs/counterdefendants' motion for summary judgment on this issue.

### 3. CIVIL CONSPIRACY

Under Mississippi law, a conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully. *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss.2004). If a civil conspiracy causes damages, a right of recovery may exist. *Id.* An action for civil conspiracy requires a showing of "'(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result.'" *Cooper Tire & Rubber Co. V. Farese*, 423 F.3d 446, 459 (5th Cir. 2005), quoting *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d at 786.

Memorial claims that it was within its legal rights to retain earnings from Norris's last two paychecks to recover a debt. Again, the court is not convinced that withholding earnings from Norris's last two paychecks was within Memorial's legal rights to obtain repayment on Norris's

11

debt. As a genuine issue of material fact remains as to whether the money retained by Memorial was an unlawful act, the court denies the plaintiffs/counterdefendants' motion for summary judgment on these issues.

## F. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Norris also contends that Campbell's actions amount to the infliction of emotional distress. Such a claim requires Campbell to show that the conduct complained of was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D.Miss.1996), quoting Restatement (Second) of Torts § 46 cmt. d. (1965). Furthermore, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Lawson v. Heidelberg Eastern*, 872 F. Supp. 335, 338 (N.D.Miss.1995), quoting Restatement (Second) of Torts § 46 cmt. d. (1965). Damages for such claims are typically not recoverable in employment disputes. *Pegues*, 913 F. Supp. at 982. Rather, "[o]nly in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994), citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989) & *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991).

Norris has presented no evidence demonstrating that her claims are outside the realm of an ordinary employment dispute. Norris stated that she did not like setting up three way calls and did not like passing along bad news. Docket no. 60-2, p. 34. The court finds these unpleasantries to

be neither extreme nor outrageous. Therefore, the court grants the plaintiffs/counter-defendants'

motion for summary judgment on this issue.

A judgment in accordance with this opinion will issue this day.

SO ORDERED, this the 24th day of February, 2009.

               ___/s/ S. ALLAN ALEXANDER_____
               UNITED STATES MAGISTRATE JUDGE